UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

JULIE MAURY                                      **Docket: 1:18-cv-07496 (RWL)**

                              Plaintiff,
            -against-                            **SECOND AMENDED**
                                                **COMPLAINT**

VENTURA IN MANHATTAN, INC. AND VSM NY
NY HOLDINGS LLC                                 **JURY TRIAL REQUESTED**

                              Defendants.
-------------------------------------------------------------------------x

## SECOND AMENDED COMPLAINT

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, plaintiff Julie Maury (hereafter referred to as "plaintiff"), by counsel, Parker Hanski LLC, as and for the Second Amended Complaint in this action against defendants Ventura In Manhattan, Inc. and VSM NY HOLDINGS LLC (together referred to as "defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This lawsuit opposes pervasive, ongoing and inexcusable disability discrimination by the defendants.  In this action, plaintiff seeks declaratory, injunctive and equitable relief, as well as monetary damages and attorney's fees, costs and expenses to redress defendants' unlawful disability discrimination against plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations, the New York State Executive Law (the "Executive Law"), § 296, New York State Civil Rights Law, § 40, and the Administrative Code of the City New York (the "Administrative Code"), § 8-107.  As explained more fully below, defendants own, lease, lease to, operate and control a place of public accommodation that violates the above-mentioned laws.  Defendants are

1

vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      These defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for defendants to accept responsibility.  This action seeks to right that wrong via recompensing plaintiff and making defendants' place of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under the ADA.  The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of discrimination alleged herein occurred in this district and defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

5.      At all times relevant to this action, plaintiff Julie Maury has been and remains currently a resident of the State and City of New York.

2

6.      Plaintiff resides eight city blocks (about a half-mile) away from the Fairway premises.

7.      At all times relevant to this action, plaintiff Julie Maury has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

8.      Defendant Ventura In Manhattan, Inc. is licensed to and does business in New York State.

9.      Defendant Ventura In Manhattan, Inc. owns the property located at 240 East 86th Street in New York County, New York (hereinafter referred to as "240 East 86th Street").

10.      At all relevant times, a Fairway Market supermarket has operated in the retail space located at 240 East 86th Street (hereinafter referred to as the "Fairway" premises).

11.      Defendant VSM NY HOLDINGS LLC is licensed to do and does business in New York State.

12.      Before May 2020, Village Super Market Inc. ("VSM") operates a chain of thirty supermarkets under the ShopRite name in New Jersey, Maryland, New York City and eastern Pennsylvania and three specialty markets under the Gourmet Garage name in New York City.

13.      On May 14, 2020, VSM completed the acquisition of certain assets, including five supermarkets, a production distribution center and the intellectual property of Fairway Group Holdings Corp. and certain of its subsidiaries, including the Fairway premises at issue in this litigation.

14.      The acquisition was effectuated pursuant to the Asset Purchase Agreement, entered into on January 20, 2020 and revised on March 25, 2020 ("APA").

3

15.     VSM paid $73.2 million for the Fairway assets, net of adjustments set forth in the APA, and to assume certain liabilities, consisting primarily of those arising from acquired leases. Additionally, VSM received a $2.0 million credit arising from the breakup of Village's initial "stalking horse" bid.

16.     Upon information and belief, defendant VSM NY HOLDINGS LLC is a wholly-owned subsidiary of VSM.

17.     Defendant VSM NY HOLDINGS LLC is now doing business as "Fairway Market" at 240 East 86th Street.

18.     Defendant VSM NY HOLDINGS LLC now operates the Fairway premises located at 240 East 86th Street.

19.     Upon information and belief, Ventura In Manhattan, Inc. and VSM NY HOLDINGS LLC have a written lease agreement.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20.     Each of the defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Fairway premises located at 240 East 86th Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

21.     The Fairway premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity and its operations affect commerce.

22.     Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

23.     Upon information and belief, 240 East 86th Street was designed and constructed for first possession after 1998.

24.     At some time after January 1998, defendants made alterations to 240 East 86th Street, including areas adjacent and/or attached to 240 East 86th Street.

25.     At some time after January 1998, defendants made alterations to the Fairway premises, and to areas of 240 East 86th Street related to the Fairway premises.

26.     At some time after January 1998, defendants altered the primary function areas of the Fairway premises and 240 East 86th Street that relate to the Fairway premises.

27.     Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Fairway premises, and to areas of 240 East 86th Street related to the Fairway premises.

28.     Within the past three years, plaintiff attempted to and desired to access the Fairway premises.

29.     Within the past three years, plaintiff has patronized the Fairway premises dozens of times and purchased items for sale therein.

30.     During the dozens of times when plaintiff has patronized the Fairway premises, she has encountered the areas of the interior that are open to public.

31.     The barriers identified below have made plaintiff's shopping experience more difficult and more time-consuming than what an able-bodied patron experiences.  These barriers have also caused plaintiff emotional distress.

32.     As an example, defendants routinely place merchandise displays in front of the elevator that make it much more difficult, if at times almost impossible, for plaintiff to independently utilize the elevator.

5

33.     The next paragraph below is a photograph showing the merchandise display barrier experienced by plaintiff and showing how the defendants place merchandise displays in front of the elevators that block plaintiff, as a wheelchair user, from being able to independently reach the elevator call button as well as blocking plaintiff's ability to reach the hand sanitizer. Plaintiff is forced to humiliate herself by looking around to beg someone for assistance to travel or to undertake the difficult exercise herself.



34.

35.     There have been numerous times when plaintiff has been deterred from shopping at the Fairway premises because of the difficulties she has encountered from the barriers identified herein.

36.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

37.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

38.     Because of defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy safe, equal and complete access to defendants' place of public accommodation.

39.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, the Building Code of the City of New York ("BCCNY"), or the 2014 New York City Construction Code ("2014 NYC").

40.     Barriers to access that plaintiff encountered, and/or which deter plaintiff from patronizing the defendants' place of public accommodation as well as barriers that exist include, but are not limited to, the following:

I.      Routes throughout the facility are less than 36 inches wide due to merchandise and displays including, but not limited to, merchandise and displays blocking the call buttons for the elevator as well as the required maneuvering clearances. *Defendants fail to provide an accessible route of at least 36 inches. See 1991 Standards 4.3.3, 2010 Standards 403.5.1, and 2014 NYC 403.5.*

II.     Many of the routes thought the facility lacks the required maneuvering to make a 180- degree turn due to merchandise and displays. *Defendants fail to provide the minimum required maneuvering clearances from which to make a 180-degree turn around an element along the accessible route. See 1991 Standards 4.3.3, 2010 Standards 403.5.2, and 2014 NYC 403.5.1.*

III.    None of the food service counters are accessible. See below. *Defendants fail to provide that at least one of each type of sales and/or service counter is accessible. See 1991 Standards 7.2(1), 2010 Standards 227.3, and 2014 NYC 1109.11.3.*

IV.     The ground level deli counter is more than 36 inches above the finish floor. *Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.*

V.      The ground level cheese counter is more than 36 inches above the finish floor. *Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.*

VI.     The ground level sushi and ramen counters are more than 36 inches above the finish floor. *Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.*

8

VII.   The cellar level seafood counter is more than 36 inches above the finish floor.
*Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.*

VIII.  The cellar level butcher counter is more than 36 inches above the finish floor.
*Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.*

IX.    The ground level self-service rotisserie items are outside of an accessible reach range.
*Defendants fail to provide that 50 percent of each type of self-service shelves at food service lines are within accessible reach ranges. See 1991 Standards 5.5, 2010 Standards 227.4, and 2014 NYC 1109.12.4.*

X.     The cellar level self-service grain items are outside of an accessible reach range.
*Defendants fail to provide that 50 percent of each type of self-service shelves at food service lines are within accessible reach ranges. See 1991 Standards 5.5, 2010 Standards 227.4, and 2014 NYC 1109.12.4.*

XI.    None of the check-out aisles are accessible. See below.
*Defendants fail to provide that a sufficient number of check-out aisle are accessible. See 1991 Standards 7.3(1), 2010 Standards 227.2, and 2014 NYC 1109.11.2.*

XII.   Check writing surfaces at the general check-out aisles are more than 34 inches above the finish floor.
*Defendants fail to provide that the top of check writhing surfaces are 28 inches minimum and 34 inches maximum above the finish floor at accessible check-out aisles. See 1991 Standards 7.2, 2010 Standards 904.3.3, and 2014 NYC 904.4.3.*

XIII.  POS machines at the express check-out aisles are outside of an accessible reach range.
*Defendants fail to provide that operable parts are within accessible reach ranges at accessible check-out aisles. See 1991 Standards 4.2.5 and 4.2.6, 2010 Standards 308.1, and 2014 NYC 308.1.*

XIV.   Cellar level coffee grinders have operable parts that are outside of an accessible reach range.

*Defendants fail to provide that operable parts are within accessible reach ranges at accessible check-out aisles. See 1991 Standards 4.2.5 and 4.2.6, 2010 Standards 308.1, and 2014 NYC 308.1.*

XV.   Hand sanitizers thought the facility are outside of an accessible reach range.
*Defendants fail to provide that operable parts are within accessible reach ranges at accessible check-out aisles. See 1991 Standards 4.2.5 and 4.2.6, 2010 Standards 308.1, and 2014 NYC 308.1.*

XVI.   The service counter is more than 36 inches above the finish floor. Furthermore, the counter is less than 36 inches in length.
*Defendants fail to provide an accessible portion of counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length (and extends the same depth as the general sales and/or service counter) at accessible sales and/or service counters. See 1991 Standards 7.2(1), 2010 Standards 904.4, and 2014 NYC 904.3.*

XVII.   An accessible route is not provided to the toilet rooms due to merchandise and displays. See below.
*Defendants fail to provide an accessible route to each portion of the building that connects to accessible building entrances. See 1991 Standards 4.1.2(2), 2010 Standards 206.2.4, and 2014 NYC 1104.3.*

XVIII.   The route to the toilet rooms is less than 36 inches between merchandise and displays.
*Defendants fail to provide an accessible route of at least 36 inches. See 1991 Standards 4.3.3, 2010 Standards 403.5.1, and 2014 NYC 403.5.*

XIX.   The toilet room is not accessible.
*Defendants fail to provide accessible toilet facilities. See 1991 Standards 4.1.3(11), 2010 Standards 213.1, and 2014 NYC 1109.2.*

XX.   The door at the toilet room lacks maneuvering clearances at the push side of the door due to merchandise and displays.
*Defendants fail to provide an accessible door with level maneuvering clearances. See 1991 Standards 4.13.6, 2010 Standards 404.2.4, and 2014 NYC 404.2.3.*

XXI.   The toilet compartment at the toilet room is not of sufficient size.
*Defendants fail to provide an accessible toilet compartment that is 60 inches wide minimum measured perpendicular to the side wall, and 59 inches deep minimum for floor mounted water closets. See 1991 Standards 4.17.3, 2010 Standards 604.8.1.1, and 2014 NYC 604.8.2.*

XXII.   The water closet in the toilet compartment at toilet room has a toilet paper dispenser in the incorrect location.

*Defendants fail to provide an accessible water closet with a toilet paper dispenser that is located 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser. See 2010 Standards 604.7, and 2014 NYC 604.7.*

XXIII.   The lavatory at the toilet room has unprotected hot water and drainpipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drainpipes that are insulated or otherwise configured to protect against contact. See 1991 Standards 4.19.4, 2010 Standards 606.5, and 2014 NYC 606.6.*

XXIV.   The mirror above the lavatory at the toilet room is more than 40" above the finish floor.
*Defendants fail to provide an accessible mirror (when located above lavatories or countertops) that is installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor within accessible toilet and bathing facilities. See 1991 Standards 4.19.6, 2010 Standards 603.3, and 2014 NYC 603.3.*

XXV.   The paper towel dispenser at the toilet room is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XXVI.   The hand dryer at the toilet room is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

XXVII.   The coat at the toilet room is outside of an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 Standards 4.2.6, 2010 Standards 308.3.1, and 2014 NYC 308.3.1.*

41.   Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

42.   Defendants have endangered plaintiff's safety and denied plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

43.   Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws.  Nor

11

have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

44.     Defendant Ventura In Manhattan, Inc. has failed to ensure that its lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY and 2014 NYC including but not limited to ensuring the maintenance of accessible features.

45.     Plaintiff has a realistic, credible and continuing threat of discrimination from the defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within defendants' place of public accommodation continue to exist and deter plaintiff.

46.     Plaintiff frequently travels to the area where defendants' place of public accommodation is located.

47.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC.

48.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC.

49.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year as "tester" to monitor, ensure, and determine whether defendants' place of public accommodation is fully accessible and compliant with the 1991 Standards or the 2010

Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY and 2014 NYC – all for the benefit of those similarly situated to plaintiff.

## FIRST CAUSE OF ACTION
### (Violations of the Americans with Disabilities Act)

50.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

51.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

52.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

53.     Under the ADA, both the property owner and lessee are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

54.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled.  Defendants' policies and practices have disparately impacted plaintiff as well.

55.     By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

13

56.     Defendants have discriminated against the plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

57.     Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

58.     Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

59.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

60.     28 C.F.R. § 36.406(5) requires defendants to make the facilities and elements of their noncomplying public accommodation accessible in accordance with the 2010 Standards.

61.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make defendants' place of public accommodation fully accessible.

62.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

63.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

14

64.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

65.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
### (Violations of the New York State Executive Law)

66.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

67.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

68.     Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

69.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

70.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

15

71.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

72.     It would be readily achievable to make defendants' place of public accommodation fully accessible.

73.     It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

74.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

75.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Violations of the Administrative Code of the City of New York)**

76.     Plaintiff realleges and incorporates by reference all allegations set forth in this Amended Complaint as if fully set forth herein.

77.     Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

78.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law.  The Restoration Act confirmed the legislative intent to abolish

16

"parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent possible.

79.     Defendants have and continue to subject plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the Administrative Code § 8-107(4).  Each of the defendants have aided and abetted others in committing disability discrimination.

80.     Defendants have discriminated, and continue to discriminate, against plaintiff in violation of the Administrative Code § 8-107(4) by designing, creating and/or maintaining an inaccessible commercial facility/space.

81.     Defendants have subjected, and continue to subject, plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the Administrative Code § 8-107(4).

82.     In violation of Administrative Code § 8-107(6), defendants have and continue to, aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public

17

accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

83.    Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

84.    As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

85.    Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

86.    By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

87.    Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

88.    By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

89.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violations of the New York State Civil Rights Law)

90.     Plaintiff realleges and incorporates by reference all allegations set in this Amended Complaint as if fully set forth herein.

91.     Defendants discriminated against plaintiff pursuant to New York State Executive Law.

92.     Consequently, plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

93.     Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

94.     Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

95.     Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

96.     Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

97.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

## ATTORNEY'S FEES, EXPENSES AND COSTS

98.     In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorney's fees, expenses and costs pursuant to the ADA and the Administrative Code.  42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment against the defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A.     Enter declaratory judgment declaring that defendants have violated the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' place of public accommodation, and defendants' policies, practices and procedures;

B.     Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

      C.     Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

      D.     Award plaintiff compensatory damages as a result of defendants' violations of New York State Executive Law and the Administrative Code of the City of New York;

      E.     Award plaintiff punitive damages in order to punish and deter the defendants for their violations of the Administrative Code of the City of New York;

      F.     Award plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

      G.     Award reasonable attorney's fees, costs and expenses pursuant to the Administrative Code;

      H.     Find that plaintiff is a prevailing party in this litigation and award reasonable attorney's fees, costs and expenses pursuant to the ADA; and

      I.     For such other and further relief, at law or in equity, to which plaintiff may be justly entitled.

Dated: June 11, 2020
     New York, New York

                            Respectfully submitted,

                            **PARKER HANSKI LLC**

                            By:____/s_____
                                Glen H. Parker, Esq.
                                Adam S. Hanski, Esq.
                                Robert G. Hanski, Esq.
                                Attorneys for Plaintiff
                                40 Worth Street, 10th Floor
                                New York, New York 10013
                                Telephone: (212) 248-7400
                                Facsimile: (212) 248-5600

Email:ash@parkerhanski.com
Email: ghp@parkerhanski.com
Email: rgh@parkerhanski.com