UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JULIE MAURY,

                           Plaintiff,

              - against -

VENTURA IN MANHATTAN, INC.,
and VSM NY HOLDINGS LLC,

                       Defendants.

---------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**_____
**DATE FILED:**__6/10/2021__

18-CV-7496 (RWL)

**DECISION AND ORDER:**
**MOTION TO DISMISS**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      Plaintiff Julie Maury ("Plaintiff"), who is disabled and uses a wheelchair, filed this action against the tenant and landlord of a Fairway Market grocery store (the "Store") for violation of the American with Disabilities Act (the "ADA") and its state and local counterparts.  Defendants Ventura In Manhattan, Inc. ("Ventura"), and VSM NY Holdings LLC ("VSM") are, respectively, the property's current landlord and tenant. Earlier in the action, the predecessor tenant defendant, Fairway East 86th Street LLC ("Legacy Fairway"), filed for bankruptcy, at which point Plaintiff dropped Legacy Fairway from the case and added VSM as a defendant.  Defendant VSM now moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiff's claims are barred by the sale of the Store to VSM, and, alternatively, on the basis that Plaintiff has failed to plausibly plead a claim based on alterations made to the Store.  For the following reasons, Defendant's motion is DENIED.

**Factual And Procedural Background**

      The facts are drawn from Plaintiff's Third Amended Complaint, filed on October 30, 2020, which is the currently operative complaint (the "Complaint"), as well as from

1

documents incorporated by reference in the Complaint, public records, and matters of which the Court may take judicial notice.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (identifying materials that a court may consider on motion to dismiss).

## A.    Plaintiff's Claims

Plaintiff lives near and shops at the Store.  (Compl. ¶¶ 9, 31.)  On August 17, 2018, she commenced litigation against Legacy Fairway and Ventura.  (Dkt. 1.)  She alleged then, and continues to allege now against VSM as current operator of the Store, that the Store is a place of public accommodation not readily accessible as required by the ADA, state, and local law.  (Compl. ¶¶ 19-21, 38.)  The Store has at least 27 discrete barriers that impede equal access.  (Compl. ¶¶ 22, 33, 39.)  The barriers include, for example, pathways that are less than 36 inches wide due to merchandise displays; food service counters that are too high; inaccessible checkout aisles; and others.  (Compl. ¶ 39.)  Plaintiff further alleges that both Defendants made alterations to the Store but when doing so failed to make changes that would make the Store accessible to Plaintiff to the maximum amount feasible.  (Compl. ¶¶ 55, 64.)

As a result, Plaintiff has not been able to enjoy full and equal access to the Store but would like to do so in the future.  (Compl. ¶¶ 41-45, 50, 52, 54.)  The Complaint advances four causes of action.  The First Cause of Action, seeking injunctive relief for violation of Title III of the ADA, and the Third Cause of Action, seeking injunctive relief and damages for violation of the Administrative Code of the City of New York (the "NYCHRL"), are asserted against both Defendants.  The Second Cause of Action (mislabeled as "Third Cause of Action" in the Complaint), for violation of the New York

State Executive Law, and the Fourth Cause of Action, for violation of the New York State Civil Rights Law, are asserted against only Ventura.

## B.   Legacy Fairway's Bankruptcy And Sale To VSM

Certain allegations in the Complaint turn on the divide before and after May 2020, when VSM acquired Legacy Fairway assets, a transaction arising out of Legacy Fairway's bankruptcy.  Legacy Fairway filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on January 23, 2020.  (Dkt. 54, Ex. A.)  The bankruptcy filing resulted in the automatic stay of claims against Legacy Fairway pursuant to Section 362 of the Bankruptcy Code, 11 U.S.C. § 362.  (Dkt. 55.)

On March 25, 2020, Plaintiff was served notice of the potential sale of the Store by Legacy Fairway to VSM pursuant to Section 363 of the Bankruptcy Code and informed of her right to object to the sale by April 1, 2020.  (Bisceglie Decl. Exs. 1-2.[1])  Plaintiff did not lodge any objection or other attempt to preserve her claims with respect to the Legacy Fairway business.

By order dated April 20, 2020 (the "Sale Order"), the bankruptcy court approved the sale of the Store to VSM.  (Bisceglie Decl. Ex. 3.)  The acquisition was effectuated by an Asset Purchase Agreement.[2]  (Compl. ¶ 13.)  The sale closed on May 14, 2020.  (Compl. ¶ 12.)  The assets, acquired for $73.2 million, included five supermarkets, a production distribution center parking lot, and certain intellectual property.  (Compl. ¶ 14; Asset Purchase Agreement at p. 1.)  As part of the sale, VSM also assumed

---

[1] "Bisceglie Decl." refers to the Declaration of Kyle Bisceglie, filed November 16, 2020 (Dkt. 88).  That declaration attaches, among other items, legal documents from Legacy Fairway's bankruptcy of which the Court takes judicial notice.

[2] The Asset Purchase Agreement appears as Exhibit A to the Sale Order attached as Exhibit 3 to the Declaration of Kyle Bisceglie.

certain liabilities (Compl. ¶ 14), including liabilities incurred after the bankruptcy "relating to or arising out of the ownership or operation of the [Store]."   (Asset Purchase Agreement §§ 1.1 (definition (d) of "Assumed Liabilities"), 2.2.)   Both the assets acquired and liabilities assumed were "on 'as is' condition and on a 'where is' basis, without any representation or warranty of any kind …."   (Compl. ¶ 30 (quoting Asset Purchase Agreement § 4.8).)

The Sale Order includes limitations and prohibitions on claims made arising out of the assets acquired through the sale.   For instance, the Sale Order provides that holders of any claims who did not object to the sale are deemed to have consented to the sale pursuant to the Bankruptcy Code.   (Bisceglie Decl. Ex. 3 ¶ 14.)   More broadly, VSM acquired the Fairway Legacy assets "free and clear of all encumbrances, claims …, interests, and liens, … and any derivative, vicarious, transferee or successor liability claims, rights or causes of action (whether in law or in equity …), whether arising prior to or subsequent to the [commencement of the bankruptcy proceedings]."   (Bisceglie Decl. Ex. 3 ¶ 13.)   Further, the Sale Order bars litigants (among others) who held claims against Legacy Fairway prior to the sale and arising out of the acquired assets (including the Store) from commencing or continuing any such claims against the buyer – i.e., VSM.   (Bisecglie Decl. Ex. 3 ¶ 15.)   In other words, litigants who, before the sale, asserted claims, as defined within the Bankruptcy Code, against Legacy Fairway arising out of its business may not, after the sale, assert those claims against VSM.

**C.    Plaintiff's Pleading Amendments After The Legacy Fairway Sale**

On June 11, 2020, Plaintiff filed an amended complaint to account for the sale of the Fairway business to VSM.   (Dkt. 67.)   In particular, she dropped Legacy Fairway as

a defendant, and added VSM as a defendant.  Plaintiff made further amendments, culminating in the current Complaint.  (Dkt. 84.)

The Complaint maintains many of the allegations that were made against Legacy Fairway in the initial complaint, including assertion of the same barriers to equal access at the Store and that alterations were made to the Store at some time after January 1998.  The allegations against Ventura have not changed as relevant here.  But while many of the allegations made against VSM are similar to those that Plaintiff had asserted against Legacy Fairway, the Complaint limits its allegations against VSM to conduct and conditions since May 2020, when it acquired the Legacy Fairway assets.  (*See, e.g.*, Compl. ¶¶ 52, 59, 61, 63, 85-88, 90, 92.)  Similarly, the Complaint seeks damages against Ventura without limitation, but seeks damages against VSM since only May 2020.  (*Compare* Compl. at p. 22 ¶¶ D-E, *with* Compl. at p. 23 ¶¶ D-E.)

### Applicable Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In considering a motion to dismiss for failure to state a cause of action, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all

reasonable inferences in the [non-moving party's] favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted). This tenet, however, is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949-50. Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... i.e., enough to make the claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman*, 706 F.3d at 152. In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Limited Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

## Discussion

VSM advances two arguments for dismissal.  First, VSM argues that the Sale Order bars Plaintiff's claims against it.  Alternatively, VSM argues that Plaintiff's allegations that VSM failed to make required alterations are insufficient to establish a plausible claim.  Neither argument survives scrutiny.

## A.    Plaintiff's Claims Are Not Barred By The Bankruptcy Sale

VSM's argument that Plaintiff's claims are barred is straightforward:  Plaintiff received notice of Legacy Fairway's bankruptcy; Plaintiff did not object to the terms of sale of Legacy Fairway's assets to VSM; the Sale Order extinguished Plaintiff's claims, and now prohibits her from asserting her claims against VSM.

VSM invokes the Bankruptcy Code which allows a trustee or debtor in possession to sell property of the bankruptcy estate "free and clear" of creditors' interests.  11 U.S.C. § 363(b), (f).  VSM also relies on the Sale Order provision that echoes the "free and clear" language of the Bankruptcy Code, namely that VSM acquired the Fairway Legacy assets "free and clear" of all claims, including "transferee or successor liability claims, rights or causes of action … whether arising prior to or subsequent to the [commencement of the bankruptcy proceedings]," and the Sale Order provision that bars litigants from commencing or continuing to pursue claims against VSM (as buyer) "arising under or out of, in connection with, or in any way relating to, … the Acquired Assets or [Legacy Fairway]'s business[ ] prior to the Closing Date." (Bisecglie Decl. Ex. 3 ¶¶ 13, 15.)

VSM's argument improperly elides events before, and events after, the Legacy Fairway bankruptcy sale.  Plaintiff discontinued claims against Legacy Fairway, and she

does not seek to impose liability on VSM for any of Legacy Fairway's conduct or for the Store's inaccessible conditions prior to May 2020, when VSM acquired the Legacy Fairway assets.   Rather, Plaintiff's claims against VSM are based solely on VSM's conduct and the conditions of the Store **after** the sale.   To be sure, Plaintiff seeks relief against Defendant Ventura for the pre-sale period; but the Complaint very precisely cabins her claims as against VSM.   As such, Plaintiff's claims against VSM fall squarely within the post-bankruptcy liabilities assumed by VSM.   *See Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 157 (2d Cir. 2016) (claims based on New GM's post-petition conduct are outside the scope of sale order's "free and clear" provision).[3]

VSM characterizes Plaintiff's claims against VSM "as being based on a 'continuing wrong' represented by the alleged barriers to Plaintiff's access to and use of the Store – barriers that allegedly existed at the time of the [bankruptcy] sale and purportedly continue to exist today."  (VSM Mem. at 8-9.[4])  In support, VSM cites to paragraph 80 of the Complaint, which alleges that "Defendants['] failure to provide an accessible supermarket at the Fairway Premises is a 'continuous wrong' to plaintiff and a continuous violation under the New York City Human Rights Law."  (Compl. ¶ 80.) VSM contends that the claims based on such a theory are precisely ones that are barred by Paragraph 15 of the Sale Order.

---

[3] Tellingly, VSM's reply brief nowhere addresses or attempts to distinguish the case law cited by Plaintiff throughout her opposition brief.

[4] "VSM Mem." refers to VSM's opening brief in support of its motion to dismiss, filed November 16, 2020 (Dkt. 87).

Again, VSM's argument is wide of the mark.   VSM's argument is based on the assumption that the continuing wrong alleged as to VSM necessarily refers to a wrong continuing before and after the bankruptcy sale.   But the allegation need not be construed that way; rather, a reasonable reading of the allegation is that Plaintiff asserts against Defendant Ventura a continuing wrong existing for many years, including before the sale, but asserts against Defendant VSM continuing wrong for a period starting and continuing after May 2020.   Indeed, that is the reading most consistent with the rest of the Complaint, which confines its allegations against VSM to the period after May 2020 and alleges that Plaintiff has continued to patronize the Store and encountered discrimination with each visit.  (*See* Compl. ¶¶ 31-33.)

VSM also overlooks that Plaintiff's claim for injunctive relief is not the type of claim extinguished in bankruptcy.  A dischargeable "claim" is one that is either a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."  11 U.S.C. § 101(5)(A)-(B).  VSM acknowledges as much in setting forth its own understanding of the law:  "The Bankruptcy Code allows a trustee or debtor in possession to sell property of the bankruptcy estate 'free and clear' of creditors' 'interests.'  11 U.S.C. § 363(b), (f).  A claim for monetary relief, or injunctive relief *that involves the payment of money*, is an interest encompassed by section 363.  11 U.S.C. § 363(f)(5)."  (VSM Mem. at 8 (emphasis added).)

The injunctive relief Plaintiff seeks is not one for breach giving rise to payment.  Indeed, a violation of Title III of the ADA does not and cannot give rise to a right to payment for damages.  *Powell v. National Board of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a

right granted under Title III; he cannot recover damages").  Accordingly, it does not comprise a claim from which VSM acquired the Fairway business "free and clear."  *See In re Lafemina*, No. 14-43362, 2017 WL 4404254, at *3-7 (Bankr. E.D.N.Y. Sept. 30, 2017) (injunctive relief sought for violation of non-compete agreement was not a dischargeable claim because payment of monetary damages was not an available substitute for the injunctive relief) (collecting cases); *cf. Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 37 (1st Cir. 2009) (claim for wrongful termination based on discrimination in violation of ADA was discharged because money damages were alternative remedy to reinstatement); *Kresmery v. Service America Corp.*, 227 B.R. 10, 15-16 (D. Conn. 1998) (claim for employment discrimination prior to bankruptcy confirmation was discharged where claim was based solely on pre-confirmation conduct).

What's more, VSM concedes "its ongoing obligations under the ADA to remove any pre-existing barriers to access in or about the Store, to the extent it is 'readily achievable' to do so." (VSM Reply Mem. at 5.[5])  VSM argues, however, that although it may be liable to other disabled persons who sue VSM for alleged ADA violations, it owes no such obligation to Plaintiff because she first sued Legacy Fairway.  (*See* VSM Reply at 1-2. ("To be crystal clear:  VSM does **not** argue that it is immune from liability under antidiscrimination laws" but "simply asks this Court to enforce the plain terms of the [Sale Order] which bar *Plaintiff* from pursuing as against VSM the same claims she pursued against Legacy Fairway") (emphases in original).)  If Plaintiff currently were

---

[5] "VSM Reply Mem." refers to VSM's reply memorandum of law in support of its motion to dismiss, filed January 8, 2021 (Dkt. 96).

seeking damages for the period prior to May 2020, VSM would have a valid point.  But that is not what the Complaint seeks to do with respect to VSM.

As Plaintiff aptly observes, the Sale Order and VSM's purchase of the Store do not "magically grant[ ]" VSM "a license to violate the law and harm plaintiff in perpetuity." (Pl. Opp. at 1.[6])  *See Morgan Olson, LLC v. Frederico (In re Grumman Olson Industries, Inc.)*, 445 B.R. 243, 250 (Bankr. S.D.N.Y. 2011) (Section 363 sale order does not give defendant a "free pass on future conduct").  The Court agrees.  "A 'fresh start' means only that; it does not mean a continuing license to violate the law."  *O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (pre-petition lawsuit for discrimination in violation of ADA Title I could continue post-petition, including damages for post-petition violations).  Plaintiff's claims against VSM for VSM's post-sale violations of antidiscrimination laws are not barred.

## B.   Plaintiff's Claims Are Adequately Plead

VSM challenges as insufficient Plaintiff's allegations concerning VSM's failure to make requisite alterations to the Store.  The allegations at issue appear principally in two paragraphs.  The first paragraph generally asserts, "In or around May 2020 to the present, [VSM] made alterations to the areas utilized by customers of the Fairway Premises including, but not limited to, the installation of equipment identified in Section 5.1(e) of the [Asset Purchase Agreement] that [VSM] utilizes in its operation of the Fairway Premises."  (Compl. ¶ 28.)  The second paragraph references a statement from a VSM SEC filing for the fiscal year ended July 25, 2020, that "VSM has an 'ongoing

---

[6] "Pl. Opp." refers to Plaintiff's memorandum in opposition to VSM's motion to dismiss, filed December 11, 2020 (Dkt. 94).

program to upgrade and expand its supermarket chain,' which includes the Fairway Premises.  In or after May 2020, [VSM] remodeled the Fairway Premises along with installing equipment upgrades."  (Compl. ¶ 29.)  VSM asserts that those allegations are too general and conclusory to plausibly state a claim that "[u]pon making alterations to the Fairway Premises including those described herein, since May 2020 [VSM] failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible …."  (Compl. ¶ 64; *see also* Compl. ¶ 65.)

The problem with VSM's argument is that it ignores the requisite elements to state a claim for the causes of action asserted against it.  As noted, the Complaint asserts only two causes of action against VSM – one under the ADA, the other under the NYCHRL.  The NYCHRL makes no distinction as to whether a defendant made alterations; whether or not VSM made alterations therefore is not an element of Plaintiff's NYCHRL claim.  *See* NYCHRL § 8-107(4)(a)(1)(a).  VSM does not argue otherwise, and the Complaint's cause of action for VSM's alleged violation of the NYCHRL makes no mention of alterations.  (*See* Compl. ¶¶ 78-97.)

The only claim potentially subject to VSM's argument therefore is Plaintiff's ADA claim.  But here too, allegations of failure to make sufficient changes upon having undertaken alterations is not a necessary element of a claim under Title III of the ADA. A claim under Title III of the ADA requires that a plaintiff allege "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide."  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).  Plaintiff has sufficiently plead each of

those elements:  (1) Plaintiff is disabled within the meaning of the ADA because she is substantially limited in the life activity of walking and requires a wheelchair for mobility (Compl. ¶¶ 10, 47); (2) VSM owns, leases, and operates the Store, which is a place of public accommodation subject to the ADA (Compl. ¶¶ 16-21); and  (3) VSM discriminates against Plaintiff because the Store has architectural barriers that "have made and continue to make plaintiff's shopping experience more difficult and more time-consuming than what an able-bodied patron experiences" (Compl. ¶¶ 33-39).

That said, one way to prove liability under Title III is to establish that a defendant undertook remodeling or renovation but in doing so failed to make the premises accessible to the maximum extent feasible.  *See* 42 U.S.C. § 12183(a)(2); 28 C.F.R. §§ 36.402, 36.406.  Consistent with that scheme, the Complaint alleges failure to make requisite alterations as only one of several "alternative" bases for liability under Title III of the ADA.  (*Compare* Compl. ¶¶ 64-65 (alteration allegations), *with* Compl. ¶¶ 59, 61 (alleging failure to make all readily achievable accommodations and modifications to remove barriers to access in violation of 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304), *and* Compl. ¶ 63 (alleging failure to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305).)  In other words, Plaintiff's alteration allegations are not necessary to adequately set forth a cause of action under Title III of the ADA, and so whether or not they are defective in some way would not warrant dismissal of Plaintiff's Title III cause of action.

The Court agrees that Plaintiff's allegations specifically about whether or not VSM has in fact undertaken alterations, whether by remodeling, renovation, or otherwise, are a bit thin.  But they are enough to plausibly allege VSM's having made

alterations.  The Complaint thus specifically points to the Asset Purchase Agreement recognizing that certain furnishings and equipment were removed from the Store and that VSM would be installing new equipment.  (Compl. ¶ 28.)  The Complaint also alleges with particularity that after the sale, VSM remodeled the Store "along with" installing equipment upgrades.  (Compl. ¶ 29.)  Although that allegation is accompanied by general reference to VSM's "ongoing program to upgrade and expand its supermarket chain," which alone would not sustain an alterations claim, the reference at least lends plausibility to Plaintiff's other allegations.  *See* 28 C.F.R. § 36.402(b)(1) (examples of alterations under ADA include "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions").[7]

VSM faults Plaintiff for failing to "meet her 'initial burden of production by identifying a modification,'" citing *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 371 (2d Cir. 2008).  (VSM Opp. at 9.)  *Roberts*, however, did not address a plaintiff's burdens in

---

[7] VSM cites one case, the posture of which was a motion for default judgment, in support of its argument that Plaintiff's allegations are too general to state a claim – *O'Rourke v. Drunken Chicken in NY Corp.*, No. 19-CV-3942, 2020 WL 4013187, at *3 n.1 (E.D.N.Y. July 16, 2020) (adopting report and recommendation).  VSM provides the following parenthetical:  "allegation that defendant restaurant had 'begun operations and/or undergone substantial remodeling, repairs[,] and/or alterations' likely did not satisfy alteration standard."  (VSM Opp. at 10.)  That is not accurate and ignores the remainder of the court's footnoted language.  The court did not use the term "likely"; rather, it stated that "[i]t is unclear whether the alterations alleged by plaintiff satisfy the legal standard in 28 C.F.R. § 36.402(a) because plaintiff does not provide details as to the type of alterations made."  2020 WL 4013187 at *3 n.1.  The court then went on to say that, regardless, the plaintiff had established liability:  "This, however, does not prevent plaintiff from establishing liability, as the ADA requires removal of architectural barriers, regardless of whether alterations have been made, where such removal is readily achievable."  *Id.* (internal quotation marks omitted).  *O'Rourke* thus militates against, not for, dismissal.

pleading a cause of action sufficient to withstand a motion to dismiss.  Rather, *Roberts* was decided after trial and addressed the relative burdens of proof at trial.  It therefore is inapt.  *See Vega v. Hempstead Union Free School District*, 801 F.3d 72, 87 (2d Cir. 2015) ("courts must remember that '[t]he plausibility standard is not akin to a "probability requirement"'") (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; and citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

The extent to which VSM did or did not remodel or otherwise make alterations to the Store since after the bankruptcy sale will be explored in discovery irrespective of allegations made in that regard.  Should the evidence turn out to be lacking, VSM may have an opportunity to obtain partial summary judgment.  But at this juncture, Plaintiff's allegations are sufficient to proceed.

### Conclusion

For the reasons explained above, Defendant VSM's motion to dismiss is DENIED.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: June 10, 2021
        New York, New York

Copies transmitted this date to all counsel of record.